UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **TYRONE BROWN,**<br><br>Plaintiff,<br><br>v.<br><br>**RYAN SMITH, *et al.*,**<br><br>Defendants. | **2:24-CV-11662-TGB-CI**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER OVERRULING OBJECTIONS (ECF NOS. 58 & 59),**<br><br>**ADOPTING REPORT AND RECOMMENDATION (ECF NO. 56),**<br><br>**AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 49)** |

This matter is before the Court on Magistrate Judge Curtis Ivy, Jr.'s Report and Recommendation dated December 19, 2025 (ECF No. 56) recommending that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 49) be granted in part and denied in part. Both Defendant Ryan Smith (ECF No. 58) and Plaintiff Tyrone Brown (ECF No. 59) have filed Objections. All Defendants joined in a Response to Plaintiff's Objections (ECF No. 63) and Plaintiff also responded to Defendant's Objection (ECF Nos. 64 & 65). For the reasons that follow, Defendant Smith and Plaintiff's Objections (ECF Nos. 58 & 59) will be **OVERRULED**, and Magistrate Judge Ivy's Report and Recommendation (ECF No. 56) will be **ACCEPTED** and **ADOPTED**.

## I. BACKGROUND

### A. Factual Background

The factual allegations in the operative complaint relate to two events that occurred at the Oakland County Jail. *See* Am. Compl., ECF No. 40.

The first incident allegedly occurred late on or about June 1, 2023, and continued into the early morning of June 2, 2023 (the "June Incident"). *Id.* at PageID.217. During the June Incident, Plaintiff claims that he was choked in the strip search area of the jail while he was in restraints. *Id.* at PageID.218. He alleges that Defendant Oakland County Deputy Sheriff Brian Goleniak forced him to the ground from a standing position. *Id.* Defendant Goleniak and John Doe then allegedly sat on top of Plaintiff for ten minutes; during this time, Plaintiff purportedly told Goleniak, Doe, and other deputies involved that he could not breathe. *Id.* As a result of the June Incident, Plaintiff allegedly suffered an open head wound that required treatment at the hospital; he also claims he suffered nerve damage to an eye socket and post-traumatic stress disorder. *Id.* Plaintiff further alleges that he sustained "schizophrenia" as a result of the June Incident. *Id.* at PageID.219.

The second incident allegedly occurred on or about October 29, 2023 (the "October Incident") and involves Plaintiff's claims against Defendants Oakland County Deputy Sheriffs Ryan Smith and Joshua Swalwell. *Id.* at PageID.217. Plaintiff alleges that Defendant Swalwell

choked Plaintiff by the collar of his uniform and forced him into a hallway. *Id.* at PageID.218. Swalwell purportedly struck Plaintiff multiple times in his face with a closed fist after Plaintiff fell to the floor; this resulted in a broken blood vessel in Plaintiff's eye. *Id.* During this altercation, Defendant Ryan Smith allegedly grabbed Plaintiff's head and repeatedly pounded his head into the concrete floor, even though Plaintiff was "not resisting." *Id.* Plaintiff claims his injuries required emergency treatment, namely stitches to his lip. *Id.* He alleges Smith also caused nerve damage and deformed Plaintiff's lower lip. *Id.*

Plaintiff claims that Defendants' conduct amounted to excessive force in violation of the Fourteenth Amendment of the U.S. Constitution. *Id.* at PageID.215. Plaintiff requests compensatory and punitive damages for the physical and mental injuries he suffered. *Id.* at PageID.220.

### B. Procedural Background

After several attempts to amend his pleadings, Plaintiff Tyrone Brown, an incarcerated plaintiff proceeding *pro se*, filed the operative pleadings on January 16, 2025. ECF No. 40.

Defendants moved to dismiss the Amended Complaint on May 2, 2025, on the basis that (1) Defendants are entitled to qualified immunity, and (2) Plaintiff's claims against Smith and Swalwell are barred under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). ECF No. 49. The Motion is fully briefed. *See* ECF Nos. 54 & 55.

On December 19, 2025, Magistrate Judge Curtis Ivy recommended that Defendants' Motion to Dismiss be granted in part and denied in part. ECF No. 56. Specifically, Magistrate Judge Ivy recommended that the claim against Defendant Goleniak regarding the June Incident should be dismissed under qualified immunity, the claim against Swalwell regarding the October Incident should be dismissed under *Heck v. Humphrey*, but the claim against Defendant Smith regarding the October Incident should survive the motion to dismiss—that is, Defendant Smith is not entitled to qualified immunity and the claim is not barred by *Heck*.

Defendant Smith objected to Magistrate Judge Ivy's recommendation that the claim against him is not barred by *Heck*, but he did not object to Magistrate Judge Ivy's conclusion that he is not entitled to qualified immunity. ECF No. 58. Plaintiff objected to Magistrate Judge Ivy's recommendation that Defendant Goleniak is entitled to qualified immunity and that the claim against Defendant Swalwell is barred under *Heck*. ECF No. 59.

## II. LEGAL STANDARD

The law provides that either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of a report and recommendation. 28 U.S.C. § 636(b)(1)(C). No later than fourteen days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2).

Where neither party specifically objects to the report, the district court is not obligated to independently review the record. *See Thomas v. Arn,* 474 U.S. 140, 149–52 (1985); *Pfahler v. Nat'l Latex Prods. Co.,* 517 F.3d 816, 829 (6th Cir. 2007) (noting that failure to object waives further review of a district court's adoption of the Report and Recommendation).

But the district court will make a "de novo determination of those portions of the report . . . to which objection is made," *id.*, though it "need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party." *Ghaster v. City of Rocky River*, 913 F. Supp. 2d 443, 452 (N.D. Ohio Sep. 26, 2012) (quoting *Thomas v. Arn*, 474 U.S. at 150). General objections to a Magistrate Judge's determination "without explaining the source of the error" have "the same effect[ ] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Similarly, "objections that merely restate arguments previously raised and considered [by the Magistrate Judge] do not require the Court to consider them." *Young v. Jindal,* No. 21-12170, 2023 WL 8190689, at *1 (E.D. Mich. Nov. 27, 2023)(Drain, J.); *see also Vasconez v. Langston Co.*, 2021 WL 3124959, at *1 (W.D. Tenn. July 23, 2021) ("[W]here a party's objections are simply a repetition of the arguments he or she made to the magistrate judge, a de novo review is not warranted.").

## III. DISCUSSION

### A. Defendant Smith's Objection (ECF No. 58)

Defendant Smith objects to the recommendation that the claim against him regarding the October Incident is not barred under the *Heck* doctrine.

In *Heck v. Humphrey*, the Supreme Court held that a § 1983 plaintiff cannot recover damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." 512 U.S. at 486–87. In order to prevail in a § 1983 action under such circumstances, the plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* Otherwise, the Court must dismiss § 1983 claims if judgment in the plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.

The Sixth Circuit fashioned a test to determine whether success on a § 1983 excessive-force claim might conflict with a conviction so that it should be barred under *Heck*:

> Generally speaking, "a claim of excessive force does not necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable." *Swiecicki*, 463 F.3d at 493. . . . There are two circumstances, however, in

which an excessive-force claim might conflict with a conviction. The first is when the criminal provision makes the lack of excessive force an element of the crime. *Cf. Heck,* 512 U.S. at 486 n. 6, 114 S.Ct. 2364. The second is when excessive force is an affirmative defense to the crime, as was true in the case upon which the district court relied, *Cummings v. City of Akron,* 418 F.3d 676, 684 (6th Cir. 2005) (noting that an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense). In both of these circumstances, the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction.

*Schreiber v. Moe*, 596 F.3d 323, 334–35 (6th Cir. 2010).[1]

In this case, after Plaintiff filed this civil suit and before Defendants filed their motion to dismiss, the State of Michigan charged Plaintiff with one count for "Police Officer—Assaulting/Resisting/Obstructing Causing Injury" under Mich. Comp. Laws § 750.81d(2) naming Smith as the victim. ECF No. 49-5, PageID.295-96. This criminal case arose out of the same facts that Plaintiff alleges as the October Incident in which he claims that Defendant Smith used excessive force against Plaintiff. ECF No 56, PageID.350.[2] On March 21, 2025, Plaintiff entered a nolo

---

[1] Defendant does not dispute that the test set forth in *Schreiber* is still valid. ECF No. 58, PageID.384.

[2] Plaintiff claims in the Amended Complaint that during the October Incident, Defendant Smith allegedly grabbed Plaintiff's head and repeatedly pounded his head into the concrete floor, even though Plaintiff was "not resisting." ECF No. 40, PageID.218. "[V]iew[ing] any relevant gaps or uncertainties" in a video in Plaintiff's favor at the motion-to-dismiss stage, *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (citation omitted), the Court finds Magistrate Judge Ivy's findings, as follows, well-reasoned:

7

contendere plea to this charge and was convicted. *Id.* at PageID.299. Although the criminal conviction relates to the same set of facts as Plaintiff's civil claim, Magistrate Judge Ivy recommended that this specific conviction under MCL § 750.81d(2) would not bar Plaintiff's § 1983 excessive-force claim under the *Heck* doctrine. Magistrate Judge Ivy relied on a number of unpublished decisions from this Court holding that convictions under MCL § 750.81d are not precluded by a successful excessive force claim. *See* ECF No. 56, PageID.353-56. Defendant Smith now asks this Court to "no longer find those unpublished Eastern District of Michigan [decisions] persuasive" because they "were issued between 2016 and 2019, and they do not take into account more recent Michigan

> Because there are so many deputies surrounding Plaintiff's body, the undersigned cannot discern one way or the other whether Plaintiff continued to fight with the deputies or whether Smith—or another deputy—slammed Plaintiff's head into the floor. . . . [F]or the purpose of the pending motion, the undersigned accepts as true Plaintiff's claim that Defendant Smith slammed Plaintiff's head into the floor even though Plaintiff was no longer resisting. . . . Though the undersigned cannot discern the exact moment the deputies managed to handcuff Plaintiff, the video shows that the deputies managed to subdue Plaintiff once he was on the ground. . . . [T]he undersigned accepts that Plaintiff was no longer resisting in any way when Smith allegedly slammed Plaintiff's head into the floor.

ECF No. 56, PageID.369-71.

8

case law and criminal practice that recognize excessive force as a complete defense to a charge under MCL [§] 750.81d." ECF No. 58, PageID.385.

A review of the case law, however, reveals that contrary to Defendant Smith's position, Michigan courts have not taken a unified approach to the question of (1) whether "lack of excessive force" as opposed to simply "lawful action" is an element of the crime, or (2) whether excessive force is a complete defense to MCL § 750.81d. If "lack of excessive force" is an element of the crime of "Police Officer—Assaulting/Resisting/Obstructing Causing Injury" in violation of MCL § 750.81d(2), then a successful § 1983 excessive force suit would show that such an element cannot be proven, and thereby "imply the invalidity of his conviction or sentence." *See Heck*, 512 U.S. at 487. Similarly, if a criminal defendant interposes the complete defense of excessive force to a resisting/obstructing charge, then likewise a civil lawsuit that proved excessive force would preclude a criminal conviction for that charge or "necessarily imply the invalidity of his conviction or sentence." *Id.* Consequently, the Court will consider Michigan state law regarding both the elements of a violation of MCL § 750.81d(2) and concerning defenses to such a charge.

### 1. Elements of the Crime

In 2002, the Legislature added MCL § 750.81d, which, together with the amended version of MCL § 750.479, changed "some, but

not *all,* aspects of the common law governing the offenses of resisting and obstructing a peace officer." *People v. Moreno*, 491 Mich. 38, 52–53 (2012). From this change, the Michigan Court of Appeals inferred in *People v. Ventura* that the Legislature chose to "adopt the modern rule that a person may not use force to resist an arrest . . . regardless of whether the arrest is illegal under the circumstances of the occasion." 262 Mich. App. 370, 377 (2004). As a result, the appellate court held that MCL § 750.81d did not require a showing that the arrest was lawful. *Id.*

Citing *Ventura*, the Sixth Circuit in *Schreiber* held that a conviction under MCL § 750.81d does not preclude an excessive-force claim in a civil suit under *Heck*, reasoning that:

> Nothing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state must prove as an element of the crime that the police did not use excessive force. Indeed, the Court of Appeals of Michigan has found that a lawful arrest is not one of the elements of § 750.81d(1). *People v. Ventura,* 262 Mich. App. 370, 686 N.W.2d 748, 752 (2004).

596 F.3d at 334–35.

But in 2012, the Michigan Supreme Court "overrule[d] *Ventura* to the extent that it concluded that the common-law right to resist an unlawful arrest was abrogated by MCL [§] 750.81d." *Moreno*, 491 Mich. at 57. It concluded that, "[c]onsistently with the common-law rule, . . . the prosecution must establish that the officers' actions were lawful" under MCL § 750.81d. *Id.* at 52-53. While *Moreno* "did not explicitly state, in so many words, that the lawfulness of the officers' actions is an 'element' of

resisting or obstructing a police officer," the Michigan Court of Appeals later noted that "it was clear from context and . . . history of the right to resist unlawful arrest that such lawfulness had been considered an 'element' before *Ventura*." *People v. Quinn*, 305 Mich. App. 484, 491–92 (2014).

Nonetheless, *Moreno*'s holding that the prosecution must prove the lawfulness of the action does not mean it necessarily must prove the *lack of excessive force* as an element of the crime for purposes of the *Heck* bar. In fact, the most recent version of the Michigan Model Criminal Jury Instructions, which Defendant Smith referred to, indicates that while *Moreno* held that "a defendant may resist unlawful police conduct" and *Quinn* clarified that "the legality of the arrest or the officer's conduct is an element of the offense," "[r]esistance to the use of excessive force in effectuating an arrest raises an issue of self-defense," which is "not" addressed in the jury instruction regarding lawfulness of the police conduct.[3]

Furthermore, even after the *Moreno* decision was issued, numerous federal courts in this District have held, albeit in unpublished opinions, that *Moreno*'s requirement that the government prove lawful action does not necessarily mean it must prove *lack of excessive force*, so that a

---

[3] *See* Mich. Model Crim. Jury Instr. 13.1, 13.5, and 7.16, available at https://www.courts.michigan.gov/496353/siteassets/rules-instructions-administrative-orders/jury-instructions/criminal/current/criminal-jury-instructions.pdf (last updated Jan. 6, 2025).

11

conviction under MCL § 750.81d does not necessarily trigger *Heck*'s bar to a § 1983 excessive-force suit.[4] As the district court in *Carter* stated, "a police officer can make a 'lawful' arrest—that is, one that is supported by probable cause—but still violate the arrestee's Fourth Amendment rights by effectuating that arrest through the use of excessive force," in which case "a subsequent lawsuit charging the arresting officer with excessive force would not 'implicitly question the validity of [the] conviction,' and therefore *Heck* would not bar the action." 2017 WL 1160623, at *8-9.

---

[4] *See, e.g.*, *Nelson v. Green Oak Twp.*, No. 14-10502, 2016 WL 233100, at *19 (E.D. Mich. Jan. 20, 2016)(Borman, J.) (unpublished) ("This Court concludes that Michigan courts would not find that *Moreno* compels the conclusion that a lack of excessive force is now an element of the crime of resisting under the Michigan statute."); *Johns v. Oakland Co.*, No. 15-12924, 2016 WL 4396065, at *5 (E.D. Mich. Aug. 18, 2016)(Michelson, J.) (unpublished) ("[T]he use of excessive force during or to effectuate an otherwise lawful arrest does not render the arrest unlawful. This in turn means that a conviction under the resisting-arrest statute does not trigger *Heck's* bar to a § 1983 excessive-force suit."); *Carter v. Carter*, 2017 WL 1160623, at *8-9 (E.D. Mich. Mar. 29, 2017)(Lawson, J.), *rev'd on other grounds*, 2018 WL 1341663 (6th Cir. Mar. 15, 2018) ("[N]otwithstanding the need to prove 'lawfulness' of the arrest, the decisions on point in Michigan suggest that an arrest may be 'lawful' even if excessive force is used to accomplish it."); *Flanigan v. Panin*, No. 15-12504, 2017 WL 5709588, at *6 (E.D. Mich. May 2, 2017)(Michelson, J.), *aff'd*, 724 F. App'x 375 (6th Cir. 2018) (holding that *Heck* did not bar the excessive-force claim because "an officer can effectuate a lawful command in an unlawful manner"); *Donald v. Cieszkowski*, No. 17-cv-12190, 2019 WL 2866493, at *4–6 (E.D. Mich. July 2, 2019)(Leitman, J.) (rejecting officers' argument that "because the Michigan Supreme Court 'has now held that a 'lawful arrest' is an element of the crime of resisting or obstructing a police officer . . . the holding in *Schreiber* no longer applies").

The Sixth Circuit, in an unpublished decision, also rejected an argument that a plaintiff's conviction under MCL § 750.81 precluded his § 1983 suit under *Heck*:

> The dissent's view that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), forecloses any argument by Sevenski that he did not engage in actions justifying the use of force against him is also unavailing. We have held that "[t]he *Heck* doctrine applies only where a § 1983 claim would 'necessarily' imply the invalidity of a conviction." *Schreiber v. Moe*, 596 F.3d 323, 335 (6th Cir. 2010) (citation omitted). That is not the case here, where the jury could have validly convicted Sevenski under the Michigan statute for failing to follow a lawful command. Such a conviction does not preclude a finding of excessive force in a civil case under § 1983. *See Ruemenapp v. Oscoda Twp., MI*, 739 F. App'x 804, 809-10 (6th Cir. 2018).[5]

*Sevenski v. Artfitch*, No. 21-1391, 2022 WL 2826818, at *5 n.4 (6th Cir. July 20, 2022) (unpublished) (rejecting dissenting judge's argument that *Schreiber* and *Ruemenapp* rested on *Ventura*, a "now-overruled Michigan precedent"). Nonetheless, in a published decision, the Sixth Circuit recently suggested it should review the "scope of *Heck*" and *Schreiber* in light of *Moreno*, though it lacked jurisdiction to do so. *See Chaney-Snell v. Young*, 98 F.4th 699, 707–08 (6th Cir. 2024) ("[W]hile we have

---

[5] In *Ruemenapp*, the Sixth Circuit noted that failure to "comply with a lawful command[,] . . . absent physical resistance to a law enforcement official, would not necessarily justify a use of force by an arresting officer." 739 F. App'x at 809.

13

favorably cited *Schreiber* in two unpublished opinions after *Moreno*, neither identified *Moreno*'s change in law or discussed how it affects our *Heck* analysis.") (citing *Sevenski*, 2022 WL 2826818, at *5 n.4; *Ruemenapp*, 739 F. App'x at 809–10).

Defendant Smith did not attempt to distinguish the slew of post-*Moreno* cases finding the § 1983 excessive-force claims were not *Heck*-barred by a conviction under MCL § 750.81d.[6] Without clear guidance from the Sixth Circuit, *Schreiber* and *Sevenski* remain good law, and the district court opinions that Magistrate Judge Ivy relied on remain persuasive.

---

[6] Since *Chaney-Snell*, another court in this District declined to *Heck*-bar an excessive-force claim, citing *Schreiber* for the proposition that "[n]othing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state must prove as an element of the crime that the police did not use excessive force." *Hensley v. Darrough*, No. 23-11226, 2024 WL 5506979, at *6 (E.D. Mich. Oct. 4, 2024)(Ivy, M.J.), *report and recommendation adopted*, 2025 WL 914126 (E.D. Mich. Mar. 26, 2025)(Grey, J.) (unpublished). But another court in the Western District of Michigan *Heck*-barred a similar claim, this time relying on *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 613 (6th Cir. 2014), which found that "pre-arrest excessive force is an affirmative defense to a charge of resisting arrest *in Ohio*, and would therefore render invalid a conviction for resisting arrest." *Strickland v. Kent Cnty.*, No. 1:23-CV-1190, 2024 WL 4794694, at *3 (W.D. Mich. Oct. 10, 2024), *report and recommendation adopted*, 2024 WL 4792736 (W.D. Mich. Nov. 14, 2024) (unpublished) (emphasis added). But as further explained below, the law is not so clear in Michigan.

## 2. Complete Defense

While Defendant Smith argues "recent Michigan case law and criminal practice [ ] recognize excessive force as a complete defense to a charge under MCL [§] 750.81d," ECF No. 58, PageID.385, the case law is not so clear. In support, Defendant Smith cites two unpublished appellate state court decisions, *People v. Crigler*, No. 352594, 2021 WL 650489, at *7 (Mich. Ct. App. Feb. 18, 2021) and *People v. Ford*, No. 370794, 2025 WL 2485105, at *5 (Mich. Ct. App. Aug. 28, 2025), as well as jury instructions.[7]

In *Crigler*, in the context of an ineffective assistance of counsel claim, the Michigan Court of Appeals noted that "[t]here is authority standing for the proposition that one may defend a resisting-and-obstructing charge by proving that the officer or officers effectuating the arrest used excessive force." 2021 WL 650489, at *7 (citing *People v. Baker*, 127 Mich. App. 297, 299 (1983)). In *Baker*, the Michigan Supreme Court noted that denying an instruction on attempt under MCL § 750.479 was appropriate where:

---

[7] *See* Mich. Model Crim. Jury Instr. 13.5, available at https://www.courts.michigan.gov/496353/siteassets/rules-instructions-administrative-orders/jury-instructions/criminal/current/criminal-jury-instructions.pdf (last updated Jan. 6, 2025) (noting that "[r]esistance to the use of excessive force in effectuating an arrest raises an issue of self-defense" to a MCL § 750.81d charge, which is "not" addressed in M Crim JI 13.5 regarding legal acts and duties but rather in M Crim JI 7.16 regarding conditions for using force).

15

> Defendant did not deny that he used force to resist the arrest. Rather, he claimed that the arrest was unlawful in that the degree of force used by the officer was excessive. Those claims, if believed, would have constituted complete defenses to the charge.

127 Mich. App. at 299 (citing *People of Garden City v. Stark*, 120 Mich. App. 350, 353 (1982) (holding that "[b]ecause the officers conducted a search of defendants' house without first obtaining a search warrant, . . . the entry was unlawful, [and] the defendants had a common law privilege to use reasonable force to prevent this search" under MCL § 750.479)).

However, Defendant Smith failed to mention the part of the *Crigler* decision where the appellate court notes that "[g]enerally, challenges to the lawfulness of an arrest focus on whether an arrest is constitutionally authorized, not on the manner of the arrest itself." 2021 WL 650489, at *7 (citing *Quinn*, 305 Mich. App. at 924-93 (focusing on whether the officer's brief detention of the plaintiff was based on reasonably articulable suspicion of criminal activity)). This reasoning aligns with the above-mentioned district court decisions noting that "a police officer can make a 'lawful' arrest—that is, one that is supported by probable cause— but still violate the arrestee's Fourth Amendment rights by effectuating that arrest through the use of excessive force." *Carter*, 2017 WL 1160623, at *8-9.

Defendant Smith also cites *People v. Ford*, where the Michigan Court of Appeals recently held that "there [wa]s not a reasonable probability that the jury would have acquitted defendant of assaulting,

resisting, or obstructing either officer if defense counsel had requested special jury instructions regarding unlawful use of force." 2025 WL 2485105, at *5. Defendant Smith argues that this case "shows that Michigan courts acknowledge that excessive force is a complete defense to a charge under MCL [§] 750.81d." ECF No. 58, PageID.387.

But in the subsequent appeal of *People v. Ford* to the Michigan Supreme Court, Justice Welch wrote a concurrence to the majority's memorandum opinion denying the appeal, highlighting the need to clarify post-*Moreno* precedent given the Court of Appeals' differing approaches:

> In unpublished decisions, the Court of Appeals has narrowed *Moreno*, holding that the lawfulness of an officer's conduct depends only on whether the *initial* reason for the arrest was valid. See, e.g., *Cummings v Lewis*, unpublished opinion per curiam of the Court of Appeals, issued July 3, 2012 (Docket No. 303386), p 3 n 3, 2012 WL 2579678 (2012) ("*Moreno* does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest."); *People v Rolland*, unpublished opinion per curiam of the Court of Appeals, issued December 17, 2015 (Docket No. 322788), p 4, 2015 WL 9258236 ("[T]he common-law right to resist an unlawful arrest arises where the initial arrest itself was unlawful.").

*People v. Ford*, 31 N.W.3d 212, 213 (Mich. Mar. 6, 2026) (Mem) (Welch, J., concurring) ("I write separately because I believe courts could be misconstruing our decision in *People v Moreno*[.]"). She also noted that

17

"[b]ased on these unpublished [Michigan] Court of Appeals decisions, the Eastern District of Michigan has similarly concluded that finding that an officer used excessive force would not invalidate a conviction for resisting that force." *Id.* (citing *Shirley v. City of Eastpointe*, No. 11-14297, 2013 WL 4666890, at *6 (E.D. Mich. Aug. 30, 2013)(Rosen, J.) (unpublished); *Nelson*, 2016 WL 233100, at *19; *Johns*, 2016 WL 4396065, at *5). As a result, she stated that "[t]hrough an appropriate case, th[e Michigan Supreme] Court should clarify whether a defendant's common-law right to resist unlawful conduct includes the right to resist an officer's use of excessive force during an otherwise lawful arrest." *Id.* at 212.

Nevertheless, because the Michigan Supreme Court has not yet clarified its precedent, this Court remains bound by federal precedent relying on Michigan appellate case law finding that an officer's excessive force is not necessarily a complete defense under MCL § 750.81d. Such binding precedent includes *Schreiber*, in which the Sixth Circuit noted that:

> [O]ne recent Michigan case has strongly suggested that excessive force by the police is not a defense to a resisting-arrest conviction, *People v. Hill,* No. 283951, 2009 WL 1830750, at *3 (Mich. Ct. App. June 25, 2009) (stating that there is no authority for the proposition that the "use of excessive force by police is a valid defense to resisting and obstructing"), and several others have left unresolved the question of whether excessive force is a defense. *See, e.g., People v. Burks,* No. 284467, 2009 WL 1693743, at *2 (Mich. Ct. App. June 16, 2009); *People v. Rauch,* No. 263185, 2006 WL 3682754, *3–4 (Mich. Ct. App. Dec.14, 2006). In light of

> these state court of appeals decisions, we cannot conclude that any excessive force used by Moe would have provided Schreiber with an affirmative defense to the charge of resisting an arrest.

596 F.3d at 334–35. This part of the opinion does not rely on *Ventura*, and none of the other appellate cases cited have been overturned. More recently, the district court in *Flanigan v. Panin* relied on *Cummings*, 2012 WL 2579678, at *2 n.3, in which the Michigan Court of Appeals commented that "*Moreno* does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest." The district court noted that the Michigan Court of Appeals "has [not] had occasion to consider its previous comment." *Flanigan v. Panin*, No. 15-12504, 2017 WL 5709588, at *5 (E.D. Mich. May 2, 2017)(Michelson, J.), *aff'd*, 724 F. App'x 375 (6th Cir. 2018). And in *Hensley v. Darrough*, the district court noted that "[e]xcessive force is also not an affirmative defense to the charge of resisting arrest," citing *Hill*, 2009 WL 1830750, at *3 (stating that there is no authority suggesting that the "use of excessive force by police is a valid defense to resisting and obstructing"), and *Rolland*, 2015 WL 9258236, at *3 ("To the extent defendant attempts to use nonbinding case law to persuade us that a defendant is allowed to argue 'excessive force' as an affirmative defense to a resisting-arrest charge when the initial arrest itself was lawful, we reject this attempt."). *Hensley v. Darrough*, No. 23-11226, 2024 WL 5506979, at *6 (E.D. Mich. Oct. 4, 2024)(Ivy, M.J.), *report and recommendation adopted*, 2025 WL

19

914126 (E.D. Mich. Mar. 26, 2025)(Grey, J.) (unpublished). While Justice Welch expressed skepticism regarding *Cummings* and *Rolland*, these state cases are still good law unless and until the Michigan Supreme Court says otherwise. *See Ford*, 31 N.W.3d at 212.

Thus, in view of the divided approaches from the Michigan Court of Appeals and lack of any clear guidance from the Michigan Supreme Court or the Sixth Circuit regarding the impact of *Moreno* on the applicability of the *Heck* bar to convictions under MCL § 750.81d, this Court finds Magistrate Judge Ivy's decision that *Heck* does not bar the excessive-force claim against Defendant Smith to be well-reasoned and supported by existing precedent.

Therefore, Defendant Smith's objection is **OVERRULED**. The claim against Defendant Smith survives the Motion to Dismiss.

### B. Plaintiff's Objections (ECF No. 59)

### 1. Qualified Immunity Objection

Plaintiff objects to Magistrate Judge Ivy's finding that he "actively resisted" during the June Incident, thereby entitling Defendant Goleniak to qualified immunity for Plaintiff's claim that "Goleniak forced Plaintiff to the floor from the standing position . . . in the cell following the transfer from the strip search area." ECF No. 56, PageID.364.

It is true that "the category of resistance affects the degree of force an officer may use to arrest someone." *Bigger v. Grubbs*, No. 1:24-CV-10841, 2026 WL 524262, at *6 (E.D. Mich. Feb. 20, 2026)(Ludington, J.);

*see also Chaney-Snell,* 98 F.4th at 717–18 (concluding that the permissible degree of force an officer could use to effectuate an arrest largely depended on the degree of resistance from an arrestee) (collecting sources). The Sixth Circuit has held that a defendant-official can use force to bring an inmate or pretrial detainee to the ground in light of the individual's active resistance to the official's orders. *See Whyde v. Sigsworth,* No. 22-3581, 2024 WL 4719649, at *8 (6th Cir. 2024) ("In light of Whyde's active resistance, Officer Kerr was entitled to take Whyde to the ground."); *Cretacci v. Call,* 988 F.3d 860, 869 (6th Cir. 2021) (finding "it was reasonable for [defendant-officer] to use force against [plaintiff] when he did not obey the order to get on the ground," the officer "had a legitimate interest in maintaining order to prevent violence and protect the inmates," and the officer "used a non-lethal weapon against [plaintiff], a pepperball launcher, which led only to minor injuries— bruises that lasted for a few days").

However, "[w]hile [a plaintiff]'s non-compliance may [ ] justif[y] *some* physical response by [the defendant-officer]" to obtain compliance, "it is unreasonable to use *significant* force on a restrained subject, even if some level of passive resistance is presented." *Meirthew v. Amore,* 417 F. App'x 494, 498-99 (6th Cir. 2011) (emphasis added). Whether the use of force was objectively reasonable is a fact-specific analysis that examines matters such as the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury;

21

any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Nonetheless, in the context of qualified immunity, "where an officer could objectively believe someone was actively resisting—even if they weren't—then it is not clearly established that they wouldn't be able to use force to get obeyance." *Vinson v. Fair*, No. 24-12003, 2025 WL 2779303, at *7 (E.D. Mich. Sep. 30, 2025)(Michelson, J.) (collecting cases) (noting that while "[t]he video footage is unclear . . . as to the precise nature of [plaintiff's] sudden movement toward [the officer]," it was "clear that this sudden movement is what prompted the takedown");[8] *see also Stanfield v. City of Lima*, 727 F. App'x 841, 850 (6th Cir. 2018) ("Although [the plaintiff] argues that he lost his balance and was not trying to resist the officers' attempts to handcuff him, it was reasonable for [the officer] to perceive [the plaintiff's] movements as resistance, albeit slight resistance").

Here, Magistrate Judge Ivy found that Defendant Goleniak "could have reasonably perceived Plaintiff to be actively resisting" not only

---

[8] Plaintiff attempts to distinguish *Vinson* in that Plaintiff was in handcuffs during the cell incident, and there were eight deputies who had the situation in control. ECF No. 59, PageID.428. But Vinson was in "arm and leg restraints" when he alleged that two officers used excessive force. 2025 WL 2779303, at *5. The attempted distinction is not persuasive.

22

when he "lunged forward while restrained" in the strip search area,[9] but also when he "disobeyed a direct order to get on his knees when he started to get up" after he was transferred from the strip search area to the cell. ECF No. 56, PageID.374. Plaintiff objects that he "never actively resisted . . . when he was told to get on the ground," and that "[t]he video show[s] the deputies ordering plaintiff [to] the ground and . . . Plaintiff attempts to get on the ground but was lifted back up by Deputy Goleniak then forced headfirst as if the deputy didn't want the plaintiff to go to the ground lightly." ECF No. 59, PageID.428, 430. And Plaintiff argues that ambiguities in the video should be viewed in Plaintiff's favor. *See Meadows v. City of Walker*, 46 F.4th 416, 423-24 (6th Cir. 2022) ("[A]n officer is not entitled to qualified immunity when the facts are disputed, but a reasonable jury could find a set of facts that, if proven at trial, would show that an officer's actions violated a clearly established right.").

From the video, it appears Plaintiff is showing some active resistance, albeit slight. As Magistrate Judge Ivy described, Plaintiff "seemingly started to lower his body before trying to raise himself back

---

[9] Magistrate Judge Ivy noted that it is unclear how Defendant Goleniak was involved *prior* to the transfer from the strip search area to the cell. ECF No. 56, PageID.364. Plaintiff notes he "may not have comprehended orders during strip search as promptly as possible or expected" and that, "for the record," he "never lunged at the deputies" but was "forced in a certain direction" while in restraints which "made it look . . . as if [he] lunged at officers." ECF No. 59, PageID.428-30.

23

up." ECF No. 56, PageID.362-63. From this Court's view of the video, it looks like Plaintiff is told to get down on his knees, but does not do so; though he seems to bend at the waist, he does not go on his knees, and his body appears to be coming up instead of going downward, as if moving back up after first bending down. This seeming resistance is confirmed by an officer telling him a second time to "get down on your knees," as if to emphasize that Plaintiff did not do it when told the first time, and another officer commenting that "you are bad at following instructions." Moreover, even if "[t]he video footage [were] unclear . . . as to the precise nature of" Plaintiff's upward movement, such that it would be debatable whether Plaintiff's conduct "br[ought] him into the realm of 'active' rather than 'passive' resistance[,] [i]t follows that any constitutional right [Plaintiff] had to be free from the force used in the officers' takedown [would] not [be] clearly established." *Vinson*, 2025 WL 2779303, at \*7 (citations omitted) (collecting cases).

Finally, even assuming Plaintiff's resistance was "passive," Defendant Goleniak's "use of a pressure point to force Plaintiff's head to the ground," ECF No. 56, PageID.367, after he was already asked to "get to the ground" of the cell, was not so "significant" to be considered excessive. *See Meirthew*, 417 F. App'x at 499. Magistrate Judge Ivy found that using a pressure point on Plaintiff's mandibular nerve to force him to the ground was reasonable where he was ordered to get on his knees, but he raised himself back up. ECF No. 56, PageID.362-63. Plaintiff

objects that his "head hit[ ] the ground and there was blood all over the ground." ECF No. 59, PageID.427-28. The video does show Plaintiff screaming in pain or distress as Defendant Goleniak uses the pressure point on his mandibular nerve to force him to the ground, but there is no sign of blood, and Defendant Goleniak only rested his hand on Plaintiff's head for the rest of the incident. Using a "pressure point to force Plaintiff's head to the ground" after he was asked to get to the ground is not so significant or violent a force as "knocking the plaintiff to the ground," *Smoak v. Hall,* 460 F.3d 768, 783-84 (6th Cir. 2006), or using "violent physical force," *Harris v. City of Circleville,* 583 F.3d 356, 367 (6th Cir. 2009), such as a taser, *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 638–39 (6th Cir. 2013), or a pepper spray, *Grawey v. Drury*, 567 F.3d 302, 314 (6th Cir. 2009), to obtain compliance. Thus, the amount of force used was no more than necessary to force Plaintiff to comply, and no additional force was used once he did comply.

Plaintiff has not pointed to any contrary case suggesting that, at the time of the incident, it was clearly established that Defendant Goleniak's use of a pressure point to force Plaintiff's head to the ground to obtain compliance was unreasonable, even if he was passively resisting.[10] *See Bell v. City of Southfield*, 37 F.4th 362, 367-68 (6th Cir.

---

[10] Plaintiff cited *Meadows v. City of Walker*, 46 F.4th 416, 423-24 (6th Cir. 2022) for the proposition that "even without a clear resistance, the use of force could still be deemed as excessive." ECF No. 59, PageID.431. But that case is not factually on point. *Meadows* involves a driver struggling

25

2022) (concluding that dismissal under Rule 12(b)(6) was warranted where plaintiff failed to provide "on-point," binding case law showing that the "unlawfulness of the officer's acts [is] so well defined that no reasonable officer would doubt it"); *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) ("The plaintiff has the burden of showing that a right is clearly established.").

Therefore, Plaintiff's first objection is **OVERRULED**. The Court finds Magistrate Judge Ivy's Report and Recommendation to be well-reasoned. The claim against Defendant Goleniak regarding the June Incident will be **DISMISSED**.

### 2. *Heck* Objection

Magistrate Judge Ivy recommended that Defendant Swalwell be dismissed from the action as the claim against him regarding the October Incident is barred under *Heck v. Humphrey*, which posits that the Court must dismiss § 1983 claims if judgment in the plaintiff's favor would "necessarily imply the invalidity of his conviction or sentence." 512 U.S.

---

to open his vehicle door before two officers "threw him to the ground," pinned him down, knelt on his lower back, and struck him three times while attempting to handcuff him although he was only passively resisting, if resisting at all. 46 F.4th at 419-20. Importantly, *Meadows* does not involve a pre-trial detainee's claim of excessive force after a strip search. *See Cretacci*, 988 F.3d at 869 (explaining that the objective reasonableness of force used against a pretrial detainee "must . . . account for the jail's legitimate interest in maintaining their facility, deferring to policies and practices that are needed to preserve internal order and discipline to maintain institutional security").

26

at 487; *see also Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999) ("[U]nder *Heck*, [plaintiff's] civil rights action must be dismissed without prejudice.").

After Plaintiff filed this civil suit and before Defendants filed their motion to dismiss, the State of Michigan charged Plaintiff with one count for "Assault of a Prison Employee" under Mich. Comp. Laws § 750.197c naming Swalwell as the victim. ECF No. 49-4, PageID.295-96. On March 21, 2025, Plaintiff entered a nolo contendere plea and was convicted. *Id.* at PageID.299.

The Court reviewed Judge Ivy's Report and Recommendation and finds its discussion regarding the claim against Defendant Swalwell to be well-reasoned. Unlike under MCL § 750.81d(2), discussed above, it is clear that self-defense is a complete defense to an assault conviction under MCL § 750.197c. *See English v. Williams*, No. 08 11171, 2009 WL 3698556, at *5 (E.D. Mich. Nov. 3, 2009) ("Self-defense is a complete defense to conviction under [MCL § 750.197c] and may be argued where the defendant is acting in response to an assault by a prison employee.") (collecting Michigan Court of Appeals cases); *see also People v. Thompson*, No. 276151, 2008 WL 3413048, at *1-2 (Mich. Ct. App. Aug. 12, 2008) (explaining that in response to a charge of assaulting a prison employee under MCL § 750.197c, a "claim of self-defense necessarily requires that the defendant act in response to an assault . . . that defendant acted intentionally, but that circumstances justified the action. . . . The defense

is generally not available if the defendant was the aggressor or used excessive force."). Because Plaintiff pleaded guilty to assaulting Defendant Swalwell, a prison employee, a finding that Swalwell used excessive force would impugn the validity of that conviction. *See English*, 2009 WL 3698556, at *1.

Plaintiff's objection repeats previous arguments regarding Swalwell's unreasonable use of force and does not address the *Heck* doctrine. Thus, because Plaintiff does not explain how success on his § 1983 excessive-force claim regarding the October Incident would *not* "necessarily imply the invalidity of his conviction" under MCL § 750.197c, he provides no valid legal basis to reject the recommendation as it relates to Defendant Swalwell.

Therefore, Plaintiff's objection is **OVERRULED**. The Court finds Magistrate Judge Ivy's Report and Recommendation to be well-reasoned. The claim against Defendant Swalwell will be **DISMISSED**.

## IV. CONCLUSION

For all the aforementioned reasons, it is hereby **ORDERED** that Defendant Smith's objection (ECF No. 58) is **OVERRULED**, that Plaintiff's objections (ECF No. 59) are **OVERRULED**, and that Magistrate Judge Ivy's Report and Recommendation dated December 19, 2025 (ECF No. 56) is **ACCEPTED** and **ADOPTED**.

It is **FURTHER ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** (ECF No. 49).

Defendants Goleniak and Swalwell are **DISMISSED** from the action. The claim against Defendant Smith remains.

**SO ORDERED.**

Dated: March 31, 2026        /s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE